**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 19-MC-20751-COOKE/GOODMAN**

IN RE: APPLICATION OF

Francesco Lefebvre D'Ovidio,
For Order to Obtain Discovery
For Use in Foreign Proceeding

_____/

**OMNIBUS REPORT AND RECOMMENDATIONS ON MYRIAD MOTIONS**
**CONCERNING INITIAL ORDER GRANTING *EX PARTE* APPLICATION**
**FOR JUDICIAL ASSISTANCE IN OBTAINING EVIDENCE FOR USE IN A**
**FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782**

This matter began as a garden variety request to obtain judicial assistance in

obtaining evidence for use in a foreign proceeding (in Italy) under 28 U.S.C. § 1782 but

has now morphed into a major legal battle generating multiple motions and a large

amount of legal briefing. In fact, after United States District Judge Marcia G. Cooke

entered a routine Order [ECF No. 6] granting the Application of Francesco Lefebvre

D'Ovidio, other parties filed a motion for a protective order or to quash the subpoenas

[ECF No. 14], a motion to vacate the Order [ECF No. 35], a motion to quash the subpoenas

or for a protective order [ECF No. 36],  and another motion to vacate the Order [ECF No.

42]. Each motion has led to the filing of an opposition response and a reply, and the

Undersigned has been referred [ECF No. 20] these matters (which are discussed and

argued in **more than 157 pages of legal memoranda**, plus **multiple hundreds of pages**

of exhibits, including affidavits from professors and attorneys and/or proffered experts in Italian law). [*See* ECF Nos. 46; 47; 49; 56; 57 (additional memoranda)].

The parties have submitted this mountain of legal argument in connection with only two subpoenas served on Royal Caribbean Cruises, Ltd.: one seeking documents and one seeking deposition testimony on ten topics. [ECF No. 4-2]. Notwithstanding the volume of motions, memoranda and exhibits, this matter concerns only a *discovery dispute*. The parties are not in this Court asserting claims against each other. This proceeding is extremely limited and relates only to judicial assistance which might be of use in a foreign proceeding.

Francesco filed his application concerning a case pending in a court in Bologna, Italy: *Francesco Lefebvre D'Ovidio de Clunieres di Balsorano v. Manfredi Lefebvre D'Ovidio de Clunieres di Balsorano*. This Italian litigation concerns the ownership of the capital stock of Silversea Cruise Holding, Ltd. The subpoenas target RCCL because it acquired 66.7% of Silversea's capital stock. [ECF No. 1, p. 1].

For the reasons outlined in greater detail below, the Undersigned **respectfully recommends** that Judge Cooke **grant** the motions [ECF Nos. 35, 42] to vacate the § 1782 subpoenas and the order granting Francesco's initial *ex parte* application, **deny** all other motions as moot, and give Francesco leave to file another § 1782 Application if the Italian appellate court announces a willingness to consider new evidence or if the appellate court reverses and remands the case to the Italian trial court and that court were to determine

that new evidence could be introduced.

## I.     <u>Factual and Procedural Background</u>

Francesco's Application represented that all the statutory requirements under 28 U.S.C. § 1782 are satisfied. [ECF No. 1, p. 1]. He alleged that he is the plaintiff in the pending Italian Litigation and is therefore an "interested person." *Id.* He noted that he is seeking evidence through documents and testimony. *Id.* The *Corte d'Appello di Bologna*, the court in which the Italian Litigation is presently pending, is a conventional civil court in Italy and, accordingly, is a "tribunal" within the meaning of 28 U.S.C. § 1782. *Id.* He further alleged his ability to inject the requested information into the Italian Litigation, a pending foreign proceeding in which the Applicant is the plaintiff. [ECF No. 1, p. 2]. He noted that RCCL, the entity from which discovery is sought, is found within this District. *Id.*

Francesco also explained in his Application, that the discretionary factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 262-65 (2004), also favor granting this Application because: (1) RCCL is not a party to the Italian Litigation; (2) the *Corte d'Appello di Bologna*, in which the Italian Litigation is pending, neither has a rule nor has issued an order prohibiting the relief requested in this Application (which means the evidence obtained pursuant to 28 U.S.C. § 1782 may be added to the record in the Italian Litigation, and taken into consideration by the *Corte d'Appello di Bologna*); (3) he is not attempting to circumvent foreign proof-gathering limits or other policies of Italy or the

United States; and (4) the requested discovery is narrowly tailored to issues in the Italian Litigation and is limited to the discrete and recent time period during which RCCL conducted due diligence in furtherance of its acquisition of capital stock of Silversea, which closed on July 31, 2018. [ECF No. 1, p. 2].

Based on Francesco's *ex parte* application, Judge Cooke entered an Order granting the application and authorizing the service of the subpoenas [ECF No. 6], which were served on March 14, 2019. [ECF No. 8, p. 1].

a.  RCCL's First Motion

RCCL filed a motion for a protective order and/or to quash the subpoenas. [ECF No. 14]. The first rationale urged by RCCL -- that it should not have to respond until the Application has been unsealed -- is now, from at least one procedural perspective, moot, as the Undersigned has at this point in the process unsealed the Application. [ECF No. 22]. Nevertheless, the Undersigned notes that RCCL's first argument is that it understands that the Italian proceeding is a closed appellate proceeding limited to the appellate record on review, and is one in which Francesco lost in the first and second instances. [ECF No. 14, pp. 1-2]. Therefore, RCCL argues, the subpoenas are an attempt to circumvent foreign proof-gathering restrictions applicable to the Italian proceeding. *Id.* at p. 2.

RCCL's second ground is that it is entitled to review the Application to determine which requests, if any, are relevant and proportional to the foreign proceeding's needs.

*Id.*

RCCL's third argument is that the subpoenas are overly broad and irrelevant and seek confidential and proprietary information. *Id.*

According to RCCL, the subpoenas seek production of "essentially all the financial information, assets, and corporate records of RCCL's affiliate, Silversea Cruise Holding Ltd. ("Silversea") and every document pertaining to RCCL's acquisition of shares of Silversea that are in RCCL's possession, custody or control." *Id.* As phrased by RCCL, the discovery is "akin to post-judgment discovery against RCCL" (even though Francesco has no judgment against Manfredi Lefebvre in the foreign proceeding). *Id.* RCCL argued that it is entitled to assert confidentiality and privilege objections on Silversea's behalf because the two entities are affiliates. *Id.* at n. 3.

b.  Francesco's Opposition

Francesco opposed RCCL's motion. [ECF No. 31]. He noted that the highest court in Italy later issued a decision in his favor, annulling the decisions of the two lower courts and remanding the case to the *Corte d' Appello di Bologna. Id.* at pp. 1-2. Therefore, Francesco contends that the current procedural posture in the Italian litigation is "actually the **opposite** of what RCCL represents to this Court." *Id.* at p. 2 (emphasis added).

He also argues that RCCL did not meet its burden of proving that the subpoenas should be quashed, noting that the motion is not supported by affidavits or other

evidence demonstrating how the subpoenas are overly broad, irrelevant, unduly burdensome or seek confidential and proprietary information. *Id.* at p. 3. He also explains that appropriate measures could be taken to protect the confidentiality of any materials and proffers his willingness to enter into a confidentiality agreement. *Id.*

Francesco contends that there are no grounds justifying an order quashing both subpoenas in their entirety, and explains that courts typically prefer to issue a tailored discovery order rather than to deny all discovery. *Id.* at p. 4.

Concerning RCCL's undue burden theory, Francesco also says that the time period at issue in the subpoenas is reasonable because it seeks only documents RCCL received or generated during its due diligence of the Silversea purchase. *Id.*

Francesco urges this Court to not assess foreign laws on discoverability and admissibility of evidence because the foreign court is the forum which should resolve those questions. *Id.* at p. 7. Nevertheless, he points out, the discovery he seeks in this District is in fact admissible in the Italian litigation pursuant to a law authorizing the use of new evidence under circumstances applicable here. *Id.*

Francesco's opposition memorandum also outlined the purported factual relevance in some detail. *Id.* at pp. 8-13. He alleged that Manfredi fraudulently obtained ownership and possession of his assets, including Silversea shares, without paying consideration. *Id.* at p. 9. He further alleged that, in an attempt to frustrate his efforts to seek restitution and regain possession of the transferred assets or, in the alternative,

obtain payment of their value, Manfredi caused the capital stock of Silversea to be transferred multiple times without proper consideration to himself or entities or individuals controlled by him. *Id.*

Francesco's opposition also alleged that, as part of this complex scheme, Manfredi created, controlled and, if and when necessary, dissolved *ad hoc* entities, scattered throughout the world, which shuffled assets (including the Silversea capital stock) between themselves and also from and to Manfredi and/or persons or entities he controls. *Id.* Moreover, Francesco alleged, while the Italian litigation was pending, he discovered that RCCL was in the process of acquiring Silversea's capital stock from Manfredi and that RCCL was put on notice of his claims concerning Silversea on or about July 22, 2018, but still pressed ahead with the acquisition of Silversea's capital stock for approximately $1 billion, which closed on or about July 31, 2018. *Id.*

As framed by Francesco, the discovery he seeks here would be used to (i) establish the chain of ownership (or lack thereof) of the capital stock of Silversea; (ii) evidence Manfredi's alleged scheme to create, dominate and dissolve entities and shuffle relevant assets (including the capital stock of Silversea) between and among said entities in an effort to frustrate the Applicant's claims for restitution of the assets; (iii) evidence the monetary value of the disputed Silversea capital stock of which the Applicant seeks restitution; (iv) evidence the dividends that the Applicant should have received as shareholder of Silversea; and (v) support the Applicant's contemplated motion against

Manfredi for *sequestro conservativo* (the equivalent of an attachment of assets).[1] *Id.* at p. 10.

  c. <u>Manfredi's Motion to Vacate the § 1782 Discovery Order</u>

  Manfredi filed a motion to vacate the Order approving Francesco's Application or to stay the action pending resolution of the appeal filed by Francesco in Italy. [ECF No. 35].

  Manfredi asks the Court to disregard or strike the uncertified and allegedly "mostly indecipherable translation," which Francesco attached to Professor Patti's earlier declaration. [ECF Nos. 35, p. 1; 5-1]. He argues that the case does not require a battle of foreign legal experts, and contends that Francesco is trying to "frustrate this Court into 'throwing up its hands' and letting the foreign tribunal determine whether the documents and information from RCCL are admissible." [ECF No. 35, p. 2].

  According to Manfredi, this Court has no need to choose between contradictory interpretations of Italian law because the Italian Supreme Court's referral "is closed with a mandate that a new appellate panel apply the corrected legal principles to the existing record." *Id.*

  Manfredi highlights the point that the Italian Supreme Court's referral decision did not remand the case back to the *trial* court; it sent the case back to the *intermediate appellate court* to decide again the issues based on the existing record. *Id.* He contends that

---

[1] These litigation goals (as well as the background alleged by Francesco) are outlined in the declaration of Salvatore Patti, an Italian attorney who represents Francesco in the Italian proceedings. [ECF No. 31-1].

the decision says nothing about reopening the evidence and does not even suggest that evidence outside the original trial record would or could be considered by the intermediate appellate court on remand. *Id.* at p. 3.

Manfredi's motion argues that it is "absurd" to think that Francesco is entitled to serve subpoenas in the United States at this stage of the Italian appellate proceedings. *Id.* He accuses Francesco of persuading the Court to grant his *ex parte* application by "mischaracterizing" the status of the Italian legal proceedings by using the general, vague phrase "Italian Litigation" to disguise the fact that the legal proceedings are on appeal. *Id.* Thus, Manfredi says, the discovery Francesco seeks cannot be "for use" in the Italian Appeal Proceedings because "they literally ***cannot be used*** in those proceedings." *Id.* at p. 4 (emphasis in original).

To support this legal argument, Manfredi submitted declarations from two Italian legal scholars, both of whom are professors who confirm that the Italian referral proceeding is closed to the introduction of new evidence -- just as it would be in a case on remand to the Eleventh Circuit from the United States Supreme Court. [ECF Nos. 35, p. 4; 35-2; 35-3; 35-5; 35-6].

Manfredi also argued that the subpoenas are untimely because the sale of Silversea to RCCL did not occur until ten years after Francesco initially filed his lawsuit and 17 years after the two brothers (Francesco and Manfredi) entered into a settlement agreement. [ECF No. 35, p. 11].

9

d.  <u>Manfredi's Motion to Quash</u>

Manfredi also filed a motion to quash the subpoenas served on RCCL or for a protective order limiting the discovery available to Francesco. [ECF No. 36]. He takes issue with the lack of any time limitation in the subpoenas and describes them as seeking "essentially every single document and iota of ESI pertaining to RCCL's transaction with Silversea." *Id.* at p. 1.

Classifying the subpoenas and the Italian Supreme Court Referral Decision as "like two ships passing in the night," Manfredi argues that the documents and deposition testimony have no bearing on the sole issue presented in the Italian Appeal Proceedings: whether an October 2001 Acknowledgement was enforceable. *Id.* at p. 2. He notes that the RCCL/Silversea transaction occurred 17 years after the Acknowledgement. *Id.*

Manfredi contends that Francesco's expert, Professor Patti, does not cite any portion of the Supreme Court Referral Decision suggesting that the info Francesco seeks from RCCL would even arguably be relevant, which is, he says, "the centerpiece" of all discovery. *Id.* at p. 4. Thus, he similarly argues that the subpoenas cannot satisfy the proportionality requirements either. *Id.* at p. 5.

Finally, Manfredi highlights Francesco's failure to explain why the detailed financial information concerning the RCCL transaction, which is included in RCCL's 10-Q for the period ending September 30, 2018, is insufficient for his purposes. *Id.* at p. 8.

e. RCCL's Motion to Vacate the § 1782 Order

Although Manfredi filed a motion to vacate which RCCL joined, RCCL also filed its own motion to vacate. [ECF No. 42].

Because RCCL joined Manfredi's motion to vacate, it adopted the arguments he raised. According to RCCL, the Francesco-obtained subpoenas are an "improper attempt to perform an end-run around the Italian courts to obtain highly confidential and commercially sensitive information" that "Francesco should be seeking (but legally can no longer seek) from his brother" in the siblings' ongoing litigation in Italy. *Id.* at p. 1.

RCCL also argues that no protective order issued by this Court is capable of sufficiently protecting its confidential information from disclosure in the Italian appellate court (because this Court's jurisdiction does not extend to controlling the actions of the Italian appellate Court). *Id.* at p. 2. To illustrate its concern, RCCL submitted the declarations of a prominent international law professor and an Italian lawyer. [ECF Nos. 42-2; 42-3].

RCCL further contends that the subpoenas are unduly intrusive and that many of the documents exchanged in RCCL's transaction with Silversea remain valuable to RCCL because they are prospective in nature. [ECF No. 42, p. 2]. Therefore, RCCL argues, that it would likely suffer irreparable harm if the documents were disclosed to a competitor. *Id.*

Specifically, RCCL says the forward-looking documents include operating

budgets for all Silversea vessels, cruise revenue records and 2019 revenue forecasts, cybersecurity vulnerability assessments for existing Silversea IT systems and a security roadmap to deal with known IT security gaps, shipbuilding agreements for future Silversea vessels, payroll information, employment agreements and fuel hedging agreements. *Id.*

Moreover, RCCL argues that confidential information about Silversea's European customers and employees would violate European data privacy laws and various confidentiality agreements. *Id.*

f.   <u>Francesco's Opposition to Manfredi's Motion to Vacate</u>

Francesco's memorandum opposing Manfredi's motion to vacate begins by alleging that the motion is moot. [ECF No. 46]. According to Francesco, Manfredi's primary argument -- that no new evidence may be introduced in the Italian appellate proceedings -- is belied by Francesco's May 21, 2019 submission of a new document into the Italian appellate proceedings. *Id.* at p. 1. According to Francesco, he submitted RCCL's Form 10-Q for the quarterly period which ended September 30, 2018. *Id.* Francesco says the 10-Q contains financial information and disclosures about RCCL's $1.02 billion acquisition of Silversea in July 2018. *Id.* Francesco's opposition memorandum contends that the Bologna Court of Appeal received the new evidence, did not reject it and "instead reserved its decision on admissibility to be issued after the conclusory hearing of February 9, 2021." *Id.*

This, Francesco proclaims, "means that new evidence is indeed admissible." *Id.* If the new evidence were not admissible, he argues, then the Italian Appellate Court would have rejected the 10-Q. *Id.* In addition, he pointed out that Manfredi's attorneys advised the Italian appellate court that *they* might introduce documents if the 10-Q report were to be considered over their objections. *Id.*

Francesco also argues that Manfredi's own experts concede that Italian law permits introduction of evidence in the pending appellate proceeding when certain procedural requirements are met. *Id.* at p. 7. Thus, Francesco argues, it is up to the Italian appellate court to decide whether the procedural requirements (for applicability of the exception to the general rule that new evidence is not permitted in Italian appellate proceedings) are met. *Id.* at pp. 7-8. And, as a result, Francesco further contends, this Court should not try to decide issues of admissibility and discoverability under Italian law. *Id.* at p. 8.

Francesco also argues that he has met the "for use" requirement because he intends to offer the requested evidence in good faith and seek its admission. *Id.* He cites case law authority in which district courts here rejected the argument that a foreign appellate court would not accept new evidence (because there is a mechanism which would permit the new evidence and this was sufficient to meet the "for use" requirement of Section 1782). *Id.*

Francesco also points out that Manfredi submitted two opinions by Romano

13

Vaccarella without disclosing that Vaccarella is Manfredi's attorney in the Italian litigation. *Id.* at p. 1.

Francesco contends that he meets all the *Intel* factors. He notes that (1) RCCL is not a party to the Italian Litigation; (2) even expert testimony showing lack of receptivity by the foreign court might not be sufficient to prevent the discovery and there is not authoritative proof in the record establishing that the Italian Appellate Court would reject the § 1782 discovery; (3) there is no showing that Francesco is circumventing proof-gathering rules in Italy because the Italian courts have not denied his access to documents and testimony and because they did not reject the 10-Q report he submitted; (4) Manfredi is not the party producing, and therefore lacks standing to assert undue burden; and (5) district courts prefer to issue protective orders rather than simply denying all discovery. *Id.* at pp. 14-18.

Shifting away from the *Intel* factors, Francesco objects to Manfredi's request for a stay until the Italian appellate proceedings are concluded because (a) Manfredi is not authorized to file a motion to stay; (b) the premise of the stay request is illusory now that the Italian appellate court received the 10-Q; (c) courts must deny a stay request without a foreseeable termination date absent a compelling reason; and (d) denying him discovery he intends to produce in the Italian Appellate Proceeding would be extremely prejudicial. *Id.* at p. 19.

g.  <u>Francesco's Opposition to Manfredi's Motion to Quash/or for Protective Order</u>

Francesco filed a response to Manfredi's motion to quash and began his opposition by challenging Manfredi's description of the scope of the Italian Appellate Proceeding. [ECF No. 47]. As explained by Francesco, Manfredi's main contention is that the Italian appellate court has only a single issue before it: whether the October 2001 Acknowledgement was enforceable. *Id.* at p. 1. But, Francesco highlights, Manfredi did not mention that Francesco filed a complaint in the Italian appellate court on October 22, 2018 -- and that the appellate court will rule on the merits of his allegations in that complaint. *Id.*

As summarized by Francesco, his October 2018 complaint alleges that Manfredi induced him to transfer 52.12% of Silversea's capital stock. *Id.* It also alleges that Manfredi engaged in a complex scheme involving the shuffling of assets (including the Silversea shares) between entities scattered throughout the world "in an effort to frustrate the Applicant's ability to recover the assets in dispute." *Id.*

Moreover, the 2018 complaint seeks restitution of the Silversea capital stock which Francesco transferred and the disgorgement of dividends paid to Manfredi or entities controlled by him. *Id.*

Francesco argues that the discovery sought here (concerning RCCL's purchase of Silversea and its related dealings with Manfredi) are "clearly relevant to the allegations in the 2018 Complaint." *Id.* at pp. 1-2. And he also points out that he introduced new

15

evidence into the Italian Appellate Proceeding, "negating Manfredi's argument that no new evidence may be introduced in the current stage of the Italian litigation." *Id.* at p. 6.

     h.  <u>Francesco's Opposition to RCCL's Motion to Vacate § 1782 Discovery Order</u>

Francesco filed a response opposing RCCL's motion to vacate the earlier-entered discovery order. [ECF No. 49]. He repeats many of the arguments made in earlier submissions and emphasizes that he placed RCCL on notice of the Italian Litigation and his claims seeking restitution of 52% of Silversea's capital stock. *Id.* at p. 1. According to Francesco, RCCL announced its $1.02 billion purchase of a 67% equity stake in Silversea less than two weeks after receiving notice of the litigation and of Francesco's restitution claim. *Id.*

In his opposition, Francesco contends that RCCL has failed to meet its burden to demonstrate grounds to quash the subpoenas. *Id.* at p. 2. For example, he says that RCCL expressed concern about disclosing "operating budget forecasts for all Silversea vessels, cruise revenue records and revenue forecasts for 2019, cybersecurity vulnerability assessments for existing Silversea I.T. systems and a security roadmap to address known I.T. security gaps, shipbuilding agreements for future Silversea vessels, payroll information, employment agreements, and fuel hedging agreements" -- but then emphasizes that he has not asked for any of that information. *Id.*

To address any legitimate RCCL concern over confidentiality, Francesco says he is willing to enter into a stipulated protective order in this Court and also agrees to jointly

seek a protective order from the Italian Appellate Court. *Id.*

Francesco also rejects as a "grasping-at-straws" argument that the European Union's General Data Protection Regulation precludes RCCL from responding to the subpoenas. *Id.* at p. 3. According to Francesco, (1) RCCL has not demonstrated that it is a "controller" or "processor" located in the EU and therefore has not demonstrated that it is even subject to the regulation; (2) RCCL relies on provisions which govern transfers of information from the EU to an outside country, a clearly inapplicable section; (3) the requested document should not include information covered by the regulation, but, if it did, the information can be redacted; and (4) even if RCCL is a "controller," the disclosure is covered by several exceptions permitting disclosure, including where "processing is necessary for compliance with a legal obligation to which the controller is subject." *Id.*

In addition, Francesco says the requests are narrowly tailored. *Id.* at p. 5. He notes that the temporal scope is limited to the due diligence period. *Id.* at p. 6. And he argues that the specific documents can be found without the need for any searches, such as the financial statements of Silversea that were already *received* by RCCL during its due diligence. *Id.* He also advises that he is prepared to meet and confer further and to even eliminate certain requests, such as the request for Silversea's and SCG's tax returns. *Id.* at p. 8, n. 3.

In response to RCCL's argument that he should have obtained the requested information from RCCL's 10-Q, Francesco argues that the 10-Q report does not:

contain much of the information the Applicant seeks here, such as documents evidencing chain of ownership of the disputed Silversea shares and vessels; communications between RCCL and Manfredi concerning the Applicant's claims in the Italian Litigation; whether RCCL and Manfredi agreed to different terms, such as, for instance payment terms, of the capital stock's sale after RCCL learned about the Applicant's claims to Silversea's shares and assets; if and to what extent dividends were paid to Silversea's shareholders during the time the Applicant was fraudulently deprived of his interest in Silversea; whether Manfredi shuffled yet even this asset at will without proper consideration or business reason; and who received consideration for the sale of the shares to RCCL since, according to RCCL's Form 10-Q, the shares were sold to SCG but the consideration was received by Manfredi.

*Id.* at p. 8.

And he again asserts the point that applicants do not first need to seek the information from other sources, as the Eleventh Circuit does not follow a quasi-exhaustion requirement. *Id.* at p. 10.

Francesco's response contends that RCCL's privilege assertion is insufficient, and he spends a considerable portion of his memorandum arguing that RCCL failed to demonstrate that the requested information is confidential, that disclosure of it might be harmful and that bare assertions of irreparable harm are inadequate to justify an order quashing the subpoenas. *Id.*

He also contends that sufficient safeguards exist to protect any genuinely confidential information and argues that RCCL "fail[ed] to offer any evidence that the Italian court would not honor this Court's confidentiality order or issue its own orders to safeguard confidential information at the request of the parties." *Id.* at p. 14.

18

Finally, Francesco's memorandum discusses in detail his position that RCCL failed to establish that the EU's regulation precludes compliance. *Id.* at pp. 16-19.

    i.  <u>Manfredi's Omnibus Reply Re: His Motions to Vacate and for Protection</u>

Manfredi filed an omnibus memorandum in further support of his motions to vacate and for a protective order. [ECF No. 56].

According to Manfredi, Francesco has impermissibly introduced an entirely new document which he never attached or referenced in the initial Application and was incorrectly described in the instant dispute arising from the § 1782 Discovery Order. *Id.* at p. 1. Although Francesco described the document as the "2018 Complaint," Manfredi contends that the so-called Complaint "is not a complaint at all" because it is a mere "self-serving 'status report'" which Francesco "disingenuously suggests is the equivalent of a Federal Rule 3 'complaint.'" *Id*.

Moreover, Manfredi argues that Francesco should not be permitted to retroactively change the underlying basis for his Application and similarly contends that the Court should not rewrite the Application on his behalf. *Id.* at p. 2.

Manfredi accuses Francesco of "grossly misrepresent[ing]" the status of the remand proceedings and says that recent minutes of the Italian appellate court establish that the remand proceeding has been "officially adjourned – meaning that no further activity is allowed to take place, including discovery." *Id*.

More specifically, Manfredi contends, by quoting his expert's reply declaration,

that the Italian appellate court has "decided to by-pass the 'investigative stage' . . . and thus the parties have already been tasked with providing their final submissions to the [BAC]." *Id.* "Under Italian procedural law, this means that the parties may only submit final briefs: no new allegation can be made and no new document can be submitted." *Id.*

Concerning his position that no new evidence may be used in the Italian Appellate Proceeding, Manfredi notes that the February 21, 2021 hearing is non-evidentiary and that the only permitted activity will be the submission of closing statements and legal arguments. *Id.* at pp. 3-4. He contends that the docket of the Italian Appellate Proceeding is "officially closed" and cites a Third Circuit case rejecting the "reopening" and "revision" theories. *Id.* at p. 3.

He relies on Professor Sassani's reply declaration to reinforce his view that none of the exceptions concerning the non-admissibility of evidence on appeal apply here, and argues that "none of Francesco's three expert opinions actually refute Professor Sassani's opinion." *Id.* at p. 5.

Manfredi accuses his brother of misleading the Court by claiming that his mere submission of the 10-Q at a hearing "somehow means that the documents were 'used' by the foreign court." *Id.* at p. 6, n. 3. As explained by Manfredi, the Italian appellate court "did not evaluate either the propriety of the 'submission,' to wit, whether Francesco could make the submission, nor did the Court evaluate the admissibility of the submission." *Id.*

Alternatively, Manfredi says in the title to his argument that this Court should stay

this action "until the final hearing" in Italy on "February 9, 2021," but the text of his argument is that a stay should last until the Italian appellate court "decides the very question at issue *sub judice*, to wit, whether the BAC will accept new evidence." *Id.* at p. 9. Thus, it is certainly conceivable that the requested stay would last until some point *after* the February 9, 2021 hearing. Manfredi did not specify when he (or his Italian law expert) expects the Italian Appellate Court to issue a ruling on the potential new evidence issue.

      j.   <u>RCCL's Reply Memorandum Re: Its Motion to Vacate the § 1782 Discovery Order</u>

Similar to arguments asserted by Manfredi, RCCL's reply[2] contends that Francesco has tried to cure the purported fatal deficiencies in his submission by adding a new rationale for the requested discovery. [ECF No. 57].

RCCL contends that Francesco is pretending that his subpoenas do not request the documents listed, and also that Francesco seeks to rewrite his deposition subpoena "on the fly" by seeking a "unilateral, after-the-fact transformation" of the Court's Order by seeking a corporate representative deposition (about substantive topics), rather than the *records custodian deposition* he actually obtained. *Id.* at pp. 3-4.

RCCL contends that (1) the subpoenas which Francesco obtained are not narrowly tailored; (2) Francesco has, in effect, admitted the point; and (3) the mere fact that the subpoenas are not narrowly tailored is sufficient by itself for a Court order finding undue

---

[2]    RCCL formally joined in and incorporated Manfredi's reply. [ECF No. 57, p. 2, n. 1].

burden. *Id.* at p. 4.

In addition, RCCL notes that the subpoenas do in fact "unquestionably include privileged information" because this subpoena includes blanket requests for "all" documents concerning the transaction. *Id.* at p. 7. Therefore, RCCL argues, Francesco's argument that he is not seeking privileged communications is incorrect and was caused by Francesco's situation of being "once again backed into a corner by his overbroad subpoena language." *Id.* at p. 7.

Mirroring an argument raised by Manfredi, RCCL argues that Francesco's "transparent attempt to admit the Form 10-Q in Italy for the sole purpose of demonstrating to this Court that can indeed use the discovery in Italy resulted in . . . *nothing*." *Id.* (italics in original). RCCL highlights the fact that the Italian appellate court "took no action at all on the document" and reserved all evaluations on the admissibility of the document until February 9, 2021. *Id.*

RCCL argues that the Italian court would not be bound by a United States protective order and that no real safeguards exist. *Id.* at pp. 7-8. It also stresses that there is a significant difference between an Italian protective order to govern the disclosure of RCCL's confidential information and Francesco's agreement to enter into a non-disclosure agreement, a scenario which concerns RCCL because "there is no guarantee that an Italian court will take any action to ensure the confidentiality of RCCL's information." *Id.* at p. 8.

RCCL also rejects Francesco's argument that hearings can be closed to the public. *Id.* at p. 9. For this point, RCCL relies on its expert's declaration, which explains that hearings must be open except in cases of public order, public morality and state security -- none of which exist in the Italian appellate case. *Id.*

RCCL also contends that Francesco has failed to establish that RCCL's confidential information would be adequately protected in Italy and then argues that the remedy is an order vacating the earlier-issued Order and quashing the subpoenas. *Id.*

Finally, RCCL advances several arguments about why it views the subpoenas as seeking information subject to the EU privacy regulation. *Id.* at p. 10. It also contends that Francesco must assume RCCL's costs (including attorney's fees) of complying with the EU regulation and must indemnify RCCL against any liability arising from its compliance with this Court's (*ex parte*) Order authorizing discovery. *Id.* at p. 11.

## II.  **Applicable Legal Principles & Analysis**

### a.  Magistrate Judge Jurisdiction

There is no clear guidance from the U.S. Supreme Court or the Eleventh Circuit Court of Appeals about a federal magistrate judge's authority, absent consent from the parties, to enter an order on a motion to quash subpoenas issued under § 1782, or whether the magistrate judge must instead enter a report and recommendations. On the one hand, the Eleventh Circuit has held that it reviews orders from § 1782 proceedings using a "deferential standard [that] is identical to the one [it] use[s] when reviewing a district

court's ordinary discovery rulings." *See Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1268 (11th Cir. 2014). That would normally signal that such an order is non-dispositive, just like standard, garden-variety discovery orders, which magistrate judges routinely issue.

But on the other hand, § 1782 proceedings concern *only* discovery. Discovery disputes are not simply non-dispositive matters within a larger case; discovery disputes *are* the case in a § 1782 proceeding. Thus, the Eleventh Circuit has recently held that "an order denying a motion to quash a subpoena is a final, appealable order in proceedings brought under § 1782." *Application of Furstenberg Fin. SAS v. Litai Assets LLC*, 877 F.3d 1031, 1033 (11th Cir. 2017). Consequently, an order denying (or granting) a motion to quash would seem essentially a case-dispositive ruling, at least for purposes of appeal.

The Eleventh Circuit could have decided the issue in *Weber v. Finker*, 554 F.3d 1379 (11th Cir. 2009), but declined to do so. In the underlying proceedings the, the district court judge held that the magistrate judge had the authority to issue an **order** on a motion to compel discovery sought under § 1782. *Weber v. Finker*, No. 307-MC-27-J-32MCR, 2008 WL 2157034, at *1 (M.D. Fla. May 20, 2008) (citing *In re Duizendstraal*, No. 3:95-MC-150-X, 1997 WL 195443, at *1 (N.D. Tex. Apr. 16, 1997)). The Eleventh Circuit affirmed the order's substantive rulings but avoided the jurisdictional issue, reasoning that the objecting party waived the jurisdictional objection by failing to raise it early enough. Specifically, the parties objecting to the discovery order did not object to the referral to the magistrate

24

judge until after the magistrate judge entered his Order. *Weber*, 554 F.3d at 1385 (citing *Hill v. Duriron Co., Inc.*, 656 F.2d 1208, 1213 (6th Cir. 1981) ("[A] party who objects to a reference to a magistrate must make his objections known either at the time of reference or soon thereafter")); *see also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 925 F.2d 853, 857 (5th Cir. 1991) ("A party waives his objection when he participates in a proceeding before a magistrate and fails to make known his lack of consent or fails to object to any other procedural defect in the order referring the matter to the magistrate until after the magistrate has" ruled).

Judges within the Eleventh Circuit have issued both orders and reports and recommendations concerning § 1782 rulings. *Compare In re Application of N. Am. Potash, Inc.*, No. 12-20637, 2013 WL 12113190, at *1 (S.D. Fla. Mar. 13, 2013) (report and recommendations), *with In re Sergeeva*, No. 1:13-CV-3437-LMM-RGV, 2015 WL 12866970, at *1 (N.D. Ga. Feb. 6, 2015) (order). And other Circuit Courts are split on the issue. *Compare Phillips v. Beierwaltes*, 466 F.3d 1217, 1222 (10th Cir. 2006) (questioning whether a magistrate judge can issue a final order to compel discovery in a § 1782 case), *with Four Pillars Enters. Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1080 (9th Cir. 2002) (affirming orders by magistrate judge in § 1782 case without questioning jurisdiction); *cf. In Re Bernal*, No. 18-21951, 2018 WL 6620085 (S.D. Fla. Dec. 18, 2018) (magistrate judge entered order granting in part a motion to quash subpoenas issued under § 1782 without discussing jurisdictional authority).

25

In light of this uncertainty, the Undersigned will take the conservative approach and issue a Report and Recommendations. *See In re Application of Republic of Ecuador*, No. 4:11MC73-RH/WCS, 2011 WL 10618727, at *1 (N.D. Fla. Aug. 24, 2011) (issuing a report in a § 1782 case in an abundance of caution during an "especially contentious litigation" where "the parties have shown that no stone will be left unturned to delay or advance its progress"). To borrow and modify the metaphor used in *Republic of Ecuador*, the parties here have established that they will leave no pebble unturned.

b. Standard

"Section 1782 is the product of congressional efforts, over [a] span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1198 (11th Cir. 2016). It authorizes, but does not require, district courts to assist applicants. *Id.* Whether to grant relief under the statute is up to the court's **discretion**. *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1271 (11th Cir. 2014).

Section 1782 provides as follows:

The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing *for use* **in a proceeding** in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The

26

order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

§ 1782 (emphasis added).

The Eleventh Circuit has distilled this statute to include four statutory requirements:

> (1) the request must be made "by a foreign or international tribunal," or by "any interested person"; (2) the request must seek evidence, whether it be the "testimony or statement" of a person or the production of "a document or other thing"; (3) the evidence must be "for use in a proceeding in a foreign or international tribunal"; and (4) the person from whom discovery is sought must reside it be found in the district of the district court ruling on the application for assistance.

*Sergeeva*, 834 F.3d at 1198–99.

But apart from these requirements, the court must, if the statutory requirements are met, also apply the four discretionary factors established by the Supreme Court in *Intel*. *Application of Consorcio Ecuatoriano de Telecomunicaciones*, 747 F.3d at 1271. A panel of the Eleventh Circuit has spelled out those factors as follows:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," because "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is

otherwise "unduly intrusive or burdensome." The Supreme Court in *Intel* added that "unduly intrusive or burdensome requests may be rejected or trimmed."

*Id.* at 1272 (quoting *In re Clerici*, 481 F.3d 1324, 1334 (11th Cir. 2007)); *see also Sergeeva*, 834 F.3d at 1199 (finding that a court has discretion whether and how to grant an applicant's § 1782 request if the four statutory requirements are met and after considering the four *Intel* factors).

Examined in context, this statutory language "authorizes, but does not require," that district courts provide judicial assistance to § 1782 applicants. *See Intel Corp.*, 542 U.S. at 255 at 264; *United Kingdom v. United States*, 238 F.3d 1312, 1318–19 (11th Cir. 2001) ("Whether, and to what extent, to honor a request for assistance pursuant to § 1782 [is] committed to [the district court].").

c.   Analysis

i.   The Statutory Requirements: "For Use" in a foreign proceeding

Although the Italian Supreme Court has reversed the *Corte d'Appello di Bologna* on the legal issues of implied consent and consideration and referred the matter back to a new panel of the *Corte d'Appello di Bologna* for the limited purpose of correcting errors of law, the decision itself plainly does not say anything about "reopening" the evidence or even suggest that evidence outside the original trial record would or could be considered on referral back to the intermediate appellate court. In other words, there is no indication that the documents and testimony could be "used" in the Italian Appellate Proceeding.

The Referral Decision does not remand the case *to the trial court*. The case has been sent back to the intermediate appellate court to re-decide the issue based on the record that the first appellate court reviewed. The phrase "Italian Litigation" used by Professor Patti is misleading; the proceedings in Italy are more aptly called the "Italian *Appeal* Proceedings."

Neither the trial court, the Bologna appellate court, nor the Italian Supreme Court ever reached the substance of whether the May 30, 2001 Settlement itself had or had not been breached. *See generally* Referral Decision & Opinions of Profs. Vaccarella and Sassani. [ECF No. 35]. The information and documents Francesco seeks from RCCL are therefore not "for use" in in the Italian Appeal Proceeding because they literally cannot be used in those proceedings.

To support his view that the evidence cannot be for "use" in the Italian Appellate Proceeding, Manfredi submitted the declarations of two Italian legal scholars, both of whom corroborate that the Italian referral proceeding is closed to the introduction of new evidence.

Manfredi's first legal expert is Professor Romano Vaccarella, who was engaged to explain Italian procedure for cases referred from the Supreme Court to an intermediate appellate court. Professor Vaccarella is a former Italian Supreme Court Justice and a professor of law who teaches Italian civil procedure and who literally wrote the Italian rules of civil and appellate procedure.

Professor Vaccarella is unequivocal in his declaration that the referral at issue here is a closed proceeding, and no new evidence may be taken or received by the Bologna Court of Appeal. By his preliminary opinion dated March 29, 2019, Professor Vaccarella confirms that a referral proceeding is not a complete "do over." [ECF No. 35-3]. Rather, it is limited to the same legal issues and same evidence presented to the intermediate appellate court the first time around, except that the new panel must apply the principles of law as clarified by the Court of Cassation. *Id.*

By further opinion dated April 11, 2019, Professor Vaccarella explains that referral from the Italian Supreme Court to the Bologna Court of Appeal is governed by Article 394 of the ICCP, which expressly precludes the introduction of new evidence except under very limited circumstances that are not applicable here. [ECF No. 35-4].

Manfredi's rebuttal expert, Professor Bruno Sassani, a published scholar on Italian appellate procedure who has taught civil procedure at the University of Rome for the past twenty years, opines on the correct rules governing referral proceedings from the Italian Supreme Court and how they are different from the rules relied on in Professor Patti's flawed opinion. [ECF No. 56].

Succinctly, Professor Sassani makes clear that it is impossible for Francesco to admit new evidence in the referral appeal to the Bologna intermediate appellate court because the Referral Decision is not based on the erroneous admission of evidence, but rather only on the application of incorrect principles of law. [ECF No. 56]. In addition,

30

Processor Sassani makes clear that the amount of Francesco's damages, if liability is determined, are fixed and cannot be increased or decreased by new evidence on appeal. *Id.*

But evaluating the discovery request in context demonstrates that the sale of Silversea to RCCL did not occur until ten years after Francesco initially brought the lawsuit, which was 17 years after the underlying settlement agreement was entered into by the two brothers. Francesco has not convincingly explained how or why he could use this after-the-fact evidence in an appellate proceeding which does not permit new evidence. *See In re Application of Shahrokh Mireskandari*, CV 12-10310 DSF, 2013 WL 12081082, at *1 (C.D. Cal. Feb. 15, 2013) (denying Applicant's motion for reconsideration of order denying Section 1782 discovery application and rejecting speculation that "perhaps the appellate court might find that the current situation warranted admission of new evidence that was not raised below," and noting that there is "no reason why the appellate court would stray from general practice in this case to allow Appellant to fix his mistake or alter his strategic course, whichever it might be").

Professor Sassani explained that the BAC ruled at the May 21, 2019 hearing that it was proceeding to final hearing, though it was not required to, "thus ruling that the broad-brushed, invasive discovery sought by Francesco in this Court cannot be used in Italy." [ECF No. 56].

The professor also noted that "the hearing scheduled for February 21, 2021 is non-

evidentiary, meaning that the only permitted activity will be the submission of closing statements and legal arguments; no further motions can be filed, no further allegations can be lodged, no witnesses can be examined, and no further evidentiary materials can be introduced." *Id.* at pp. 3-4.

At bottom, the docket of the Italian Appellate Proceeding is closed and scheduled for final arguments, which means that Francesco cannot use the documents. *See Comision Ejecutiva Hidroelectrica del Rio Lempa v. Nejapa Power Co., LLC*, 341 F. App'x 821, 828 (3d Cir. 2009) ("In the end, we must reject both the 'reopening' and 'revision' theories offered by CEL and find that this entire matter has become moot. In similar circumstances, the Second Circuit vacated the order compelling the production of discovery and remanded the case with instructions for the district court to dismiss the § 1782 application as moot.").

To be sure, Francesco seeks to convince this Court that certain limited exceptions to the no-new-evidence-on-appeal rule apply, but Professor Sassani makes it clear in his original declaration that the exceptions do not apply here [ECF No. 41-3 ¶¶ 9-18], and none of Francesco's three expert opinions actually refute Professor Sassani's opinion.

Even the broadest construction of the phrase "for use" -- meaning that the material could be used to "some advantage" in the foreign proceeding even were it not admissible, *see In re Bernal*, 18-21951-MC, 2018 WL 6620085, at *4 (S.D. Fla. Dec. 18, 2018) -- does not get Francesco over the finish line because the BAC proceeding is closed pending final

arguments.

The Undersigned is not persuaded by Francesco's argument that he already introduced new evidence into the Italian Appellate Proceedings. After hearing the parties' respective positions on Francesco's request, the Italian appellate court took no action at all on the document. It simply "reserv[ed] all evaluations on the admissibility of the document [until] February 9, 2021[.]" [ECF No. 46-4].

Similarly, the Undersigned is not moved by Francesco's argument that the 10-Q was used by the Italian Appellate Court because he submitted it at the hearing. The BAC did not evaluate either the propriety of the "submission" -- whether Francesco could make the submission, nor did the Court evaluate the admissibility of the submission. [ECF No. 46-4] ("The Court, reserving all evaluations on the admissibility of the document produced today by the appellant, adjourns for conclusive briefing to a hearing on February 9, 2021 at 11:00 am."). Instead, the BAC deferred considering the entire issue until the final hearing which is to be held in February 2021 without further discovery. *See Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 29 (2d Cir. 1998")[3]; *see generally In re Fuhr*,

---

[3]      In *Euromepa,* the Second Circuit explained that "Section 1782 is designed to provide discovery in aid of foreign litigation, not to provide discovery to justify the reopening of already completed foreign litigation." 154 F.3d at 29. Significantly, the Court held that the motion to reopen the proceedings of the French Court of Appeal "cannot serve as a predicate foreign proceeding for the Petition." *Id*. The Court provided an additional explanation which unequivocally undermines Francesco's argument here: **"the discovery certainly could not be 'for use in' the French Supreme Court appeal if that court does not take and hear new evidence."** *Id.* (emphasis added).

No. 13-21598, 2019 WL2245482, at *2 (S.D. Fla. Jan. 11, 2019) (focusing on the reality that the German Supreme Court "will not reopen the factual record or take new evidence" and emphasizing that in the § 1782 context, where the proceeding in which the discovery is to be used has concluded such that the § 1782 discovery can no longer be used in the proceeding, the § 1782 application becomes moot).

III.   <u>Conclusion</u>

Because Francesco did not establish one of the four statutory prerequisites – that the discovery is "for use" in a foreign appellate proceeding (where no new evidence can be introduced and none of the limited exceptions apply), there is no need to evaluate the other three statutory factors or the four *Intel* factors.

Therefore, the Undersigned **respectfully recommends** that Judge Cooke **grant** the motions [ECF Nos. 35; 42] to vacate the § 1782 subpoenas and the order granting Francesco's initial *ex parte* application, **deny** all other motions as moot and give Francesco leave to file another § 1782 Application if the Italian appellate court announces a willingness to consider new evidence or if the appellate court  reverses and remands the case to the Italian trial court and that court were to determine that new evidence could be introduced.

IV.   <u>OBJECTIONS</u>

The parties will have fourteen (14) to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within 14 days of

service of the objection. Failure to file objections timely shall bar the parties from a *de novo*

determination by the District Judge of an issue covered in the Report and shall bar the

parties from attacking on appeal unobjected-to factual and legal conclusions contained in

the Report except upon grounds of plain error if necessary in the interests of justice. *See*

29 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d

790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**DONE** and **ORDERED** in Chambers in Miami, Florida, July 29, 2019.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

<u>**Copies furnished to**</u>:
The Honorable Marcia G. Cooke
All counsel of record