**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 19-mc-20751-COOKE/GOODMAN

In re Application of:
Francesco Lefebvre D'Ovidio,
for Order to Obtain Discovery for
Use in Foreign Proceeding.

_____/

**APPLICANT'S OBJECTIONS TO REPORT AND RECOMMENDATIONS [ECF No. 58]**

MOSES & SINGER LLP
Jason Canales, Esq. (Florida Bar No. 793981)
Francesco Di Pietro, Esq. (*pro hac vice*)
Zaid Shukri, Esq. (*pro hac vice*)
405 Lexington Avenue, 12th Floor
New York, New York 10174
Tel: (212) 554-7875
*Attorneys for the Applicant,*
*Francesco Lefebvre D'Ovidio*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................II

PRELIMINARY STATEMENT ........................................................................................ 1

REQUEST FOR HEARING............................................................................................. 2

BACKGROUND................................................................................................................ 2

**1.**    The Italian Litigation ........................................................................................ 2

**2.**    Francesco Injects New Evidence Concerning RCC in the Italian Litigation..................... 3

**3.**    This § 1782 Proceeding ..................................................................................... 3

ARGUMENT ..................................................................................................................... 5

**A.**    Standard of Review............................................................................................ 5

**B.**    The R&R Erred in Concluding that the "For Use" Element is Not Satisfied ................... 6

**C.**    The R&R Erred in Requiring that Discovery be Admissible in the Remand Proceeding  10

**D.**    The R&R Erred in Finding that the New Evidence is Inadmissible Under Italian Law... 13

**E.**    The R&R Erred in Analyzing Foreign Law, Violating the "Twin Aims" of § 1782........ 14

**F.**    The R&R Erred in Ignoring the Applicant's Experts' Opinions ..................................... 17

**G.**    Vaccarella is Not an Independent Expert and His Opinion is not a Fairness Opinion ..... 18

**H.**    The R&R Relied on the Opinions Manfredi's Experts Without Explaining the Reason for Disregarding the Opinions of Francesco's Independent Experts...................................... 18

**I.**    Manfredi Would Not Have Moved to Vacate the § 1782 Order if the Applicant Could Not Use the Requested Discovery in the Italian Litigation .................................................... 20

**J.**    The Independent Opinion of Prof. Mirabelli, President Emeritus of the Italian Constitutional Court, Further Confirms that New Evidence May be Presented............... 20

CONCLUSION................................................................................................................ 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Air Crash Disaster at New Orleans, La.*,
   795 F.2d 1230 (1986)...................................................................................................18

*In re Application of Grupo Qumma*,
   2005 WL 937486 (S.D.N.Y. Apr. 22, 2005)...................................................................12, 13

*In re Application of Republic of Ecuador*,
   2010 WL 4027740 (E.D.Cal. Oct. 14, 2010) ...........................................................16

*In re Application of Shahrokh Mireskandari*,
   No. CV 12-10310 DSF (EX), 2013 WL 12081082 (C.D. Cal. Feb. 15, 2013) ........................9

*In re Bernal*,
   No. 18-21951-MC, 2018 WL 6620085 (S.D. Fla. Dec. 18, 2018) ...........................6, 8, 11, 16

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
   673 F.3d 76 (2d Cir. 2012)...........................................................................................10

*In re Catalyst Managerial Servs., DMCC*,
   680 F. App'x 37 (2d Cir. 2017)......................................................................................9

*In re Clerici*,
   481 F.3d 1324 (11th Cir. 2007) .................................................................................6, 9

*Comision Ejecutiva Hidroelectrica del Rio Lempa v. Nejapa Power Co. LLC*,
   341 F. App'x 821 (3d Cir. 2009).....................................................................................9

*In re Depts. of Antioquia, Caldas, Cundinamarca, & Valle del Cauca*,
   2017 WL 6557417 (S.D. Fla. Oct. 27, 2017).................................................................6

*Euromepa, S.A. v. R. Esmerian, Inc.*,
   154 F.3d 24 (2d Cir. 1998)....................................................................................8, 9, 10, 11

*Euromepa S.A. v. R. Esmerian, Inc.*,
   51 F.3d 1095 (2d Cir. 1995)........................................................................................16

*In re Ferrer*,
   Case No. 18-20226-CIV-O'SULLIVAN, 2018 WL 3240010 (S.D. Fla. Jul. 3,
   2018) .......................................................................................................................6

*In re Fuhr*,
   No. 13-21598-CIV, 2019 WL 2245482 (S.D. Fla. Jan. 11, 2019)..............................9

*Gyptec, S.A. v. Hakim-Daccach*,
    No. 16-20810-CIV, 2018 WL 4679724 (S.D. Fla. Sept. 28, 2018) ..........................................6

*Intel Corp. v. Adv. Micro Devices, Inc.*,
    542 U.S. 241 (2004) ....................................................................................................5, 9, 16

*Jarzyna v. Home Properties LP*,
    201 F. Supp.3d 650, 662 (E.D. Pa. 2016) ......................................................................18, 19

*Knight v. Thompson*,
    797 F.3d 934 (11th Cir. 2015) ..............................................................................................17

*Mims v. United States*,
    375 F.2d 135 (5th Cir. 1967) ................................................................................................17

*In re Pimenta*,
    942 F. Supp. 2d 1282 (S.D. Fla. 2013) .............................................................................9, 15

*In re Pinchuk*,
    No. 14-CIV-20047, 2014 WL 1328484 (S.D. Fla. Mar. 31, 2014) ........................................17

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981) ..............................................................................................................16

*In re Request for Assistance From Ministry of Legal Affairs of Trinidad & Tobago*,
    117 F.R.D. 177 (S.D. Fla. 1987) ...........................................................................................15

*In re Sergeeva*,
    2013 WL 12169388 (N.D. Ga. Nov. 22, 2013) ...............................................................11, 12

*In re Veiga*,
    746 F. Supp.2d 8 (D.D.C. 2010) .......................................................................................7, 16

**Statutes**

28 U.S.C. § 1782 ..................................................................................................... *passim*

Francesco Lefebvre D'Ovidio (the "Applicant" or "Francesco"), by and through his undersigned counsel, respectfully submits these objections to Magistrate Judge Jonathan Goodman's Omnibus Report and Recommendations dated July 29, 2019 (ECF No. 58) ("R&R").

## PRELIMINARY STATEMENT

The Applicant brings this proceeding under 28 U.S.C. § 1782 to obtain discovery from Royal Caribbean Cruises Ltd. ("RCC") for use in a litigation pending before the Court of Appeals of Bologna ("BCA"), in Italy (the "Italian Litigation"), between the Applicant and Manfredi Lefebvre ("Manfredi"). The R&R concluded that the "for use" statutory element of § 1782 is not met. The R&R is affected by the following errors:

(i) The R&R erred in finding that the evidence cannot be "for use" the Italian Litigation. The Applicant has already *injected*, on May 21, 2019, a new document in the Italian Litigation, demonstrating his practical ability to present new documents. That is all that is required in order to meet the "for use" test.

(ii) The R&R erred in requiring that the documents sought by the Applicant be admissible in the foreign jurisdiction, as § 1782 contains no requirement that evidence be admissible in the foreign proceeding to be considered "for use." The issue of admissibility under foreign law is for the foreign court, rather than this Court, to decide. After the Applicant injected the aforementioned document, at the end of a hearing on May 21, 2019, the BCA issued an order reserving its decision on the admissibility of the new document and adjourned for conclusive briefing to a hearing in 2021. The BCA has not stated that it will reject new documents obtained with the aid of § 1782. The R&R erred in deciding the complex issue of whether new documents are admissible under Italian law and concluded that the "for use" element is not met because they are inadmissible. It would be improper for this Court to replace the forth-coming decision of the BCA on admissibility of new documentation with its own.

(iii) The R&R erred in concluding that the requested evidence would be inadmissible under Italian law. The Applicant presented declarations and independent legal opinions of distinguished Italian law professors demonstrating that the evidence requested by the Applicant would be admissible. The R&R frustrates the BCA's ability to evaluate the admissibility of the requested discovery. By reserving its decision on the admissibility of new documents, the BCA has indicated that it might allow new discovery.

(iv) The R&R's denial of discovery based on application of Italian law is contrary to the purpose of § 1782 and disserves the "twin aims" of the statute. By misinterpreting the BCA's May 21 order and Italian law, the R&R erroneously denied the Applicant's discovery request, curtailed the Applicant's due process right to evidence and defense, and disserved the comity and judicial assistance goals of §1782.  Any differences in the parties' interpretations of complex issues of foreign law should counsel for leaving the ultimate decision on foreign law to the competent foreign tribunal.

(v)  Rather than weighing the competing expert testimonies offered by the parties, the R&R relied exclusively on the expert testimony offered by Manfredi, ignoring the expert opinions offered by the Applicant without presenting any reason for doing so. The R&R mentions the Applicant's experts only in connection with its conclusory statement that none of the Applicant's experts refute the opinion of Prof. Bruno Sassani, one of Manfredi's experts.  However, in interpreting Italian law, the R&R heavily relied on the opinion of Prof. Romano Vaccarella, who is Manfredi's attorney in the Italian Litigation and, as such, Manfredi's advocate rather than an independent expert, thus disregarding the principle of substantive and procedural justice that an expert cannot be an advocate. The rule against the witness-advocate is intended to preserve the integrity of the fact-finding process and the public's trust in unbiased fora. The R&R, however, relied almost exclusively on Prof. Vaccarella's testimony on the unsupported ground that he "literally wrote the Italian rules of civil procedure and appellate procedure."

The R&R is, in short, erroneous under both U.S. and Italian law. The Applicant meets all statutory and discretionary requirements under 28 U.S.C. § 1782.  The Applicant respectfully requests that the R&R be rejected.

## REQUEST FOR HEARING

Should the Court determine that it is necessary to weigh the parties' respective experts' opinions on Italian law, the Applicant respectfully requests an evidentiary hearing to assist the Court in understanding the procedural mechanisms under Italian law through which new evidence may be injected into the pending Italian proceeding.

## BACKGROUND

### 1.      The Italian Litigation

On March 3, 2008, the Applicant commenced the Italian Litigation in the Court of Bologna against Manfredi, seeking, inter alia, restitution of certain assets, including the capital stock of

2

Silversea. (Declaration of Prof. Salvatore Patti, dated June 13, 2019 (ECF No. 46-1) ("Patti Decl.") ¶¶ 4-10)[1]  On June 21, 2018, the Italian Supreme Court ruled in the Applicant's favor and annulled and reversed the decision of the BCA, which had affirmed the trial court's dismissal of Francesco's claims, and remanded the case to the BCA.  (Patti Decl. ¶¶ 11, 12)  On October 22, 2018, Francesco initiated the proceeding before the BCA ("Remand Proceeding") by submitting a pleading entitled *Atto di Citazione in Riassunzione* (the "2018 Complaint").  (Patti Decl. ¶ 14 and Ex. A – 2018 Complaint – thereto (ECF No. 46-2)). The 2018 Complaint apprised the BCA of the status of the litigation and the claims to be decided in the Remand Proceeding.  (*Id.*)

**2.      Francesco Injects New Evidence Concerning RCC in the Italian Litigation**

On May 21, 2019, Francesco filed RCC's Quarterly Report dated October 25, 2018 ("Form 10-Q"), using the BCA's electronic filing system.  (Patti Decl. ¶ 18 and Ex. B – Proof of Filing – thereto (ECF No. 46-3))  Form 10-Q contains information relating to RCC's acquisition of Silversea, the subject of the Applicant's discovery requests in this § 1782 proceeding.  A hearing was held on May 21, 2019, during which Manfredi's attorneys asked the BCA for time to address, and file objections pertaining to, the relevance and admissibility of the newly-submitted Form 10-Q.  (Patti Decl. ¶ 19 and Ex. C – Hearing Minutes – thereto (ECF No. 46-4))  The minutes of the May 21 hearing indicate that Manfredi's attorneys asked "to be authorized, in case the document is considered admissible, which [admissibility] they deny, to file documents and formulate investigatory requests for rebutting evidence." (*Id*. at 4)  At the end of the hearing, the BCA issued the following order: "The Court, reserving all evaluations on the admissibility of the document produced today by the appellant adjourns for conclusive briefing to a hearing on February 9, 2021 at 11:00 AM."  (*Id.*)  The February 2021 hearing is not the final phase of the appeal proceeding; instead, it commences such final phase. (Patti Decl. ¶ 21)  The parties will file their written briefs; oppositions will follow; and then reply briefs will be submitted.  The BCA will then issue its final decision or other decision, as the case may require.  (*Id.*)  In this phase, Francesco will argue, inter alia, in favor of admissibility of new documents and that the new documents should be considered in the BCA's decision on the merits.  (*Id.*)

**3.      This § 1782 Proceeding**

On February 26, 2019, the Applicant filed an application seeking discovery from RCC for use in the Italian Litigation. By Order dated March 12, 2019, the Honorable Marcia G. Cooke

---

[1] A detailed description of the factual background is provided in Patti Decl. to which this Court is respectfully referred.

granted the Application and authorized service of subpoenas on RCC. (ECF No. 6) After service of the subpoenas, RCC and Manfredi filed numerous motions.[2]  The R&R laments that the parties have submitted more than 157 pages of legal memoranda.  (R&R at 1)  That is exactly what Francesco sought to avoid when entering into a stipulation on May 2, 2019, which was intended to limit the number of motions.  (ECF No. 33)  Manfredi and RCC have violated the stipulation and filed multiple motions in an effort to muddy the waters.

In support of their respective positions, the parties submitted dueling opinions of various Italian law professors and attorneys concerning the admissibility of new evidence in the Remand Proceeding.  The Applicant submitted the legal opinion of Laura Salvaneschi, a professor of Italian Civil Procedure for nearly 30 years who is currently a full professor of Civil Procedure and Arbitration at *Università degli Studi di Milano* (one of the most prestigious law schools in Italy), a position she has held since 2004.  (ECF No. 46-5 at 2)  Prof. Salvaneschi unequivocally concluded that "documents and testimony obtained in the US may indeed be submitted in the Remand Proceeding."  (ECF No. 46-6 at 3) The Applicant also submitted an opinion by Prof. Simona Grossi, an Italian attorney and a professor of law and Theodore A. Bruinsma Fellow at Loyola Law School, who has authored several publications on Italian civil procedure, including the textbook *Commentary to the Italian Code of Civil Procedure*, Oxford University Press, 2010. (ECF No. 46-7 at 1)  Prof. Grossi also explained the circumstances in which new evidence is permitted in the pending Remand Proceeding and opined that "The evidence requested … under §1782 is intended to allow the Court of Appeals of Bologna on remand to properly complete the task entrusted to it by the Supreme Court and achieve substantial justice."  (*Id.* at 18) Prof. Salvaneschi and Prof. Grossi are experts on the Italian Code of Civil Procedure, as shown in their respective *curricula*, and they are both truly independent experts, having never been Francesco's attorneys.  Francesco also submitted the opinion of Prof. Patti who is also a professor of law and the attorney for Francesco in the Italian Litigation. Prof. Patti similarly explained the circumstances in which discovery is allowed on appeal.  (*Id.* at ¶¶ 24-30)

Manfredi's proffered expert, Prof. Vaccarella, also explained that "the production of new documents is allowed by exception" and went on to discuss the various circumstances permitting

---

[2] RCC filed a Motion for Protective Order and/or Motion to Quash Subpoenas (ECF No. 14) and a Motion to Vacate Court Order Approving § 1782 Application or, in the Alternative, to Quash Subpoenas (ECF No. 42).  Manfredi filed a Motion to Vacate Court Order Approving § 1782 Application and Alternative Motion to Stay (ECF No. 35) and a Motion to Quash or for Protective Order (ECF No. 36).

introduction of new evidence in the Remand Proceeding.  (ECF No. 41-2, at p. 3)  But Prof. Vaccarella, in his second opinion and in response to Prof. Patti's statement, also states that "**it is unthinkable that the production of new documents … might be decisive in resolving questions about events occurring in 2001** … or about events occurring in 2007."  (ECF No. 41-2 at 4 (emphasis added))  and, in so doing, he presupposes "**the production of new documents**," albeit they may not be "decisive" (which is irrelevant for the purpose of § 1782).  Prof. Sassani, also Manfredi's expert, states that the BCA will not consider any submissions until the conclusive hearing, which necessarily means that at the conclusive hearing, the BCA will, in fact, consider new submissions.  (ECF No. 56-1 ¶ 21)

All in all, the parties' experts agree, and the R&R noted, that there are circumstances under which new evidence may be injected in the Remand Proceeding.  Unsurprisingly, the experts disagree on whether the Italian law exceptions for admitting new discovery are satisfied here (although Vaccarella admitted that new documents may be allowed).

On July 29, 2019, Magistrate Judge Goodman issued the R&R, holding that the "for use" element was not satisfied and recommending that Judge Cooke grant the motions to vacate. (R&R at 34)  The R&R also recommended that Judge Cooke "give Francesco leave to file another § 1782 application if the Italian appellate court announces a willingness to consider new evidence or if the appellate court reverses and remands the case to the Italian trial court and that court were to determine that new evidence could be introduced." (*Id.*)  The R&R did not reach the issues of the discretionary factors set forth in *Intel Corp. v. Adv. Micro Devices, Inc.*, 542 U.S. 241 (2004), all of which weigh in favor of granting discovery. The R&R's conclusion that the "for use" element was not satisfied is based on a significant departure from settled law governing the "for use" element. The R&R essentially reversed the burden of proof to require that the Applicant prove that the BCA *will* accept the new evidence, which is contrary to established law that puts the burden on the party challenging § 1782 discovery to prove that the foreign court unequivocally stated that the foreign court *will not* accept new evidence.

## ARGUMENT

### A.      Standard of Review

"'In order to challenge the findings and recommendations of the magistrate judge, a party must file written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.'" *In re Depts.*

*of Antioquia, Caldas, Cundinamarca, & Valle del Cauca*, 2017 WL 6557417, at *1 (S.D. Fla. Oct. 27, 2017), *aff'd sub nom. Dep't of Caldas v. Diageo PLC*, 925 F.3d 1218 (11th Cir. 2019) (quoting *Macort v. Prem, Inc.*, 208 Fed.Appx. 781, 783 (11th Cir. 2006) (alterations omitted)). "Once a district court receives 'objections meeting the specificity requirement set out above,' it must 'make a *de novo* determination of those portions of the report to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge.'" *Depts. of Antioquia*, 2017 WL 6557417, at *1 (quoting *Macort*, 208 Fed.Appx. at 783–84 (alterations omitted)). In making a *de novo* determination, the "District Judge may also receive further evidence, recall witnesses, or recommit the matter to the Magistrate Judge with instructions." Rule 4(b) of Magistrate Judge Rules, Southern District of Florida Local Rules.

**B.      The R&R Erred in Concluding that the "For Use" Element is Not Satisfied**

The R&R's conclusion that the "for use" statutory requirement has not been satisfied is erroneous as a matter of law and unsupported by the record. The "for use" requirement is satisfied where the applicant "has the practical ability to inject the requested information into a foreign proceeding." *In re Bernal*, No. 18-21951-MC, 2018 WL 6620085, at *4 (S.D. Fla. Dec. 18, 2018) (quoting *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017)). "[T]he term 'for use' in Section 1782 has only its ordinary meaning—that the requested discovery is 'something that will be employed with some advantage or serve some use in the proceeding.'" *Id.* (quoting *Accent Delight*, 869 F.3d at 132); *In re Ferrer*, 2018 WL 3240010, at 5 (S.D. Fla. July 3, 2018). "Section 1782 does not require that every document discovered be actually used in the foreign proceeding." *Gyptec, S.A. v. Hakim-Daccach*, No. 16-20810-CIV, 2018 WL 4679724, at *4 (S.D. Fla. Sept. 28, 2018) (citing *Weber v. Finker*, 554 F.3d 1379, 1385 (11th Cir. 2009)). In addition, "§ 1782 only states that the evidence must be 'for use in a proceeding,' and nothing in the plain language of § 1782 requires that the proceeding be adjudicative in nature." *In re Clerici*, 481 F.3d 1324, 1333 (11th Cir. 2007) (citing 28 U.S.C. § 1782(a)). "[D]istrict courts need not determine that the evidence would actually, **or even probably**, be admissible in the foreign proceeding" and "the burden imposed upon the applicant is *de minimis*." *In re Veiga*, 746 F. Supp.2d 8, 18 (D.D.C. 2010) (emphasis added) (citing *In re Application of Republic of Ecuador*, 2010 WL 4027740, at *4 (E.D.Cal. Oct. 14, 2010) (concluding that applicant had made a "prima facie showing that the information it seeks … has, generally speaking, some relevance" to the foreign proceeding)).

The R&R erroneously found, without any citation to the record, that "the docket of the Italian Appellate Proceeding is closed" and that the BCA adjourned the Remand Proceeding "without further discovery." (R&R at 32, 33) The record reflects the opposite: New documents may be filed and the BCA will evaluate their admissibility. There has never been a ruling or declaration by the BCA that no new evidence may be introduced under any circumstances. Instead, on May 21, 2019, the Applicant filed Form 10-Q in the Remand Proceeding. The parties subsequently appeared before the BCA for a hearing at the end of which the BCA issued the following order: "The Court, ***reserving all evaluations on the admissibility of the document produced today by the appellant*** adjourns for conclusive briefing to a hearing on February 9, 2021 at 11:00 AM." Thus, the BCA ***did not reject, or unequivocally state that it will not consider, the new evidence*** but rather merely deferred its ruling as to its admissibility. Even the R&R recognized that "the Italian appellate court took no action at all on the [Form 10-Q]. It simply 'reserv[ed] all evaluations on the admissibility of the document [until] February 9, 2021.'" (R&R at. 33 (citing ECF No. 46-4, Hearing Minutes)

The BCA's order "reserving all evaluations on the admissibility of the document produced today", unequivocally means that: (i) the new document *was* produced; (ii) the Court *will* eventually decide on its admissibility; and (iii) by implication, that the document *could* be admissible (otherwise there would be no decision to reserve). It is undeniable that the BCA has not indicated its *unwillingness* to consider any new evidence, such as for instance evidence obtained under § 1782; on the contrary, the BCA has expressed that it may consider new evidence. In finding that the BCA adjourned "without further discovery" (R&R p. 33), the R&R has misinterpreted, and improperly even added language to, the BCA's plain and unambiguous May 21 order. There is absolutely no support for the finding that the BCA will decide "without further discovery," as improperly and erroneously found by the R&R based on Sassani's unsupported opinion. (*See* ECF No. 56-1 ¶ 16) Sassani does not cite a single case or other authority that prevents the injection of new evidence or to support his assertion that the BCA's clear and unambiguous order, reserving its decision on admissibility, is "merely a customary formality that Italian courts adopt when a last minute production is made." (*Id.* ¶ 20)

Thus, there can be no question, and the BCA's May 21 order does not raise one, that the Applicant has the practical ability to introduce new evidence into the Remand Proceeding. If Francesco had no practical ability to introduce new evidence, the BCA would have rejected Form

10-Q outright (especially given Manfredi's objection at the May 21 hearing) instead of reserving to decide on its admissibility, which implies and means that new documents may be injected and even admitted in the appeal proceeding. The R&R appears to have embraced Manfredi's argument that Italian appellate procedure is similar to U.S. appellate procedure in which new discovery is not allowed. By the same token, the Eleventh Circuit would never reserve its ruling on the admissibility of a new document if no new documents are allowed.

Even RCC's proffered expert, attorney Maurizio Dardani, unequivocally confirms in his declaration that new evidence may be injected into the Remand Proceeding:

> **any documents that Francesco attempts to introduce into the Italian appeal will be injected in the electronic dossier of the Italian court … The court will subsequently decide … whether such documents must be taken into consideration for the purposes of the decision of the case on the merits.** (ECF No. 42-3 ¶ 20)

Thus, the "for use" element is met, as the undisputed evidence clearly establishes that Francesco has the practical ability to inject the requested documents into the pending proceeding and argue for its admissibility. *See Bernal,* 2018 WL 6620085, at *5 ("Even if the Spanish Court should ultimately decline to accept new evidence, the requested discovery would still be "for use in a foreign proceeding" because Mr. Bernal intends to offer it in good faith and argue for its admission.").

In denying discovery, the R&R principally relies on cases in which there was no contemplated foreign proceeding. Here, the Remand Proceeding is a pending proceeding. In *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 28 (2d Cir. 1998) ("*Euromepa II*"), which according to the R&R "unequivocally undermines Francesco's argument" (R&R at 33 n.3), the parties had already litigated and the **final decision** had been affirmed by the French Supreme Court. *Id.* at 26. The applicants indicated they might file a motion to reopen the foreign proceeding based on newly discovered evidence they intended to procure through Section 1782. *Id.* at 29. The Second Circuit upheld the denial of the application as the proceeding was not imminent—meaning, it was neither very likely to occur nor very soon to occur, holding that Section 1782 "is designed to provide discovery in aid of foreign litigation, not to provide discovery to justify the reopening of already completed foreign litigation." *Id.* Thus, *Euromepa II* does not control where a dispute is still being adjudicated overseas. *See In re Catalyst Managerial Servs., DMCC*, 680 F. App'x 37, 40 (2d Cir. 2017) (distinguishing *Euromepa II*). Moreover, "*Euromepa* was decided

8

before *Intel* and under a heightened standard placed upon Section 1782 applicants that is no longer valid." *In re Pimenta*, 942 F. Supp. 2d 1282, 1287 (S.D. Fla. 2013) (citing *Intel,* 542 U.S. at 259), *adhered to sub nom. In re Pimenta*, 2013 WL 12157798 (S.D. Fla. Aug. 20, 2013); *see also In re Clerici*, 481 F.3d at 1333 (finding *Euromepa II* to be "unpersuasive" on the "for use" element and "declin[ing] to impose a requirement that the foreign proceeding be adjudicative in nature.").

The R&R's reliance on *Comision Ejecutiva Hidroelectrica del Rio Lempa v. Nejapa Power Co. LLC*, 341 F. App'x 821, 825 (3d Cir. 2009), is similarly misplaced.  In *Comision*, the § 1782 application was mooted because the foreign arbitration hearing was completed and the arbitral tribunal unequivocally stated that the evidentiary phase of the proceeding was closed.  *Id.*  In *In re Fuhr*, No. 13-21598-CIV, 2019 WL 2245482, at *2 (S.D. Fla. Jan. 11, 2019), *report and recommendation adopted,* No. 13-21598-CIV, 2019 WL 2245473 (S.D. Fla. Mar. 15, 2019), evidence gathering was closed in the foreign proceeding, and the foreign court had entered its judgment and denied leave to appeal.  The R&R's reliance on *In re Application of Shahrokh Mireskandari*, No. CV 12-10310 DSF (EX), 2013 WL 12081082, at *1 (C.D. Cal. Feb. 15, 2013), is also misplaced. The court there found that there was "no indication that the U.K. tribunal would be willing to consider new evidence after Applicant failed to discover or admit such evidence in the lower tribunal despite having an opportunity to do so.  This is consistent with Stuart's [**applicant expert** on English law] declaration.  Stuart went on to speculate that perhaps the appellate court might find that the current situation warranted admission of new evidence that was not raised below. The Court found this analysis unpersuasive. … **Applying the law provided by Stuart** [applicant expert], the Court sees no reason why the appellate court would stray from general practice in this case to allow Appellant to fix his mistakes or alter his strategic course, whichever it may be." *Id.* at __ (emphasis provided).  Here, there is a pending proceeding before the BCA, which has been set for a final hearing on February 9, 2021, and during or after which the BCA will decide on admissibility of new documents.  There has been no declaration by the BCA that no new evidence is allowed; on the contrary, the BCA has stated that it reserves all evaluation on admissibility which is not, by any stretch of imagination, the equivalent of an affirmative statement that no new discovery is allowed. The Applicant has submitted the opinions of three Italian law professors demonstrating that the requested evidence is admissible under Italian law.

Francesco seeks specific categories of documents from RCC generated during the course of its due diligence in connection with its acquisition of Silversea from Manfredi, including, *inter*

*alia*, documents evidencing the chain of ownership of the disputed Silversea shares. (*See* ECF No. 4-1) The requested information is relevant to: (i) establish the chain of ownership (or lack thereof) of the capital stock of Silversea; (ii) evidence Manfredi's alleged scheme to shuffle relevant assets (including the capital stock of Silversea) between and among said entities in an effort to frustrate the Applicant's claims for restitution of the assets; (iii) evidence the monetary value of the disputed Silversea capital stock of which the Applicant seeks restitution; (iv) evidence of dividends that the Applicant should have received as shareholder of Silversea; and (v) support the Applicant's contemplated motion against Manfredi for *sequestro conservativo* (the equivalent of an attachment of assets). (Patti Decl. ¶ 25) The requested information is thus relevant and useful to the Applicant in the Italian Litigation, and the R&R's conclusion that "Francesco has not convincingly explained how or why he could use this after-the-fact evidence" is therefore erroneous.

**C.     R&R Erred in Requiring that Discovery be Admissible in the Remand Proceeding**

The R&R imposes an admissibility requirement into the "for use" analysis. (R&R at 30) That amounts to legal error because "[s]ection 1782(a) contains no requirement that particular evidence be admissible in a foreign proceeding to be considered 'for use in a proceeding in a foreign or international tribunal.'" *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 77 (2d Cir. 2012).

In *Brandi-Dohrn*, the Second Circuit held that the district court "based its ruling on an erroneous view of the law when it held that the 'for use' requirement of § 1782 was not satisfied because Brandi–Dohrn had not shown that the discovery he sought was likely to be admitted in the foreign proceeding." *Id.* at 77. The parties had submitted dueling legal opinions of foreign counsel discussing whether the German appellate court would admit the new evidence. *Id.* at 78. After looking at German law, the district court found that the evidence would likely not be used in the particular proceeding on appeal in the German appellate court and granted the motion to quash the subpoenas, holding that "the for use requirement has not been satisfied." *Id.* at 79. In so holding, the district court had also relied on *Euromepa II*. The Second Circuit explained that the German appellate court "is free to exclude the evidence or place conditions on its admission" and cautioned that **"requiring a district court to apply the admissibility laws of the foreign jurisdiction would require interpretation and analysis of foreign law and such '[c]omparisons of that order can be fraught with danger.'"** *Id.* at 82 (quoting *Intel*, 542 U.S. 241, 263). The Second Circuit explained that the "for use" requirement is satisfied because "the parties do not dispute the presence of an imminent appeal in Germany before the [German appellate court] and that there are

circumstances under which the [German appellate court] could hear new evidence—regardless of how narrow those circumstances might be." *Id.* at 83. Similarly, here, the parties agree – and the R&R recognizes – that there are circumstances permitting the introduction of new evidence in the Remand Proceeding.

In *Bernal*, this Court was confronted with the same argument that the R&R bases its conclusion on, *i.e.*, that "discovery is closed in the Spanish proceedings and that no information produced in response to the subpoenas can be accepted at this stage of the case," and held:

> If the Spanish Court determines that Mr. Bernal cannot introduce any new evidence, it can simply exclude that evidence from consideration, but that is a determination for the Spanish Court to make. … **Even if the Spanish Court should ultimately decline to accept new evidence, the requested discovery would still be "for use in a foreign proceeding" because Mr. Bernal intends to offer it in good faith and argue for its admission.**

*Bernal*, 2018 WL 6620085, at *4-5 (emphasis added). The parties in *Bernal* submitted expert opinions offering contradictory conclusions as to whether new evidence is permitted in the foreign proceeding. The court declined to "discuss these differences of *opinion* in any depth, as the Court concludes that, 'in the end [it] is left without an answer as to which expert is correct.'" *Id.* at *5. The court held that "for use" was met because "[t]his is not a case where the Spanish Court has unequivocally stated that it will not consider any new evidence from Mr. Bernal and the Florida LLCs concede that there are some circumstances where new evidence may be presented." *Id.*

Similarly, in *In re Sergeeva*, 2013 WL 12169388, at *4 (N.D. Ga. Nov. 22, 2013), the court rejected the argument that discovery is "closed" in the foreign proceeding and found that the "for use" element was satisfied. The court said:

> This is not a case where the Russian court has unequivocally stated that it will not consider any new evidence … there is plainly a "mechanism" in Russian law for the admission of new evidence on appeal … and it is precisely in their prediction of how that mechanism will operate that the parties so strongly disagree. It is therefore "[t]he [Russian] court, rather than this Court, [that] should decide whether additional evidence is admissible, and it will be in a better position to do so if [Sergeeva] is permitted to conduct the requested discovery first." … It is neither necessary nor advisable for this Court to resort to a detailed analysis of the intricacies of the Russian Code of Civil Procedure in order to resolve the dispute regarding the discovery sought under § 1782. Indeed, such a "speculative foray" into foreign law appears to be quite at odds with the purposes of that statute, one of which is to provide "efficient assistance" to foreign tribunals.

2013 WL 12169388 at *4 (quoting *In re Application of Grupo Qumma*, 2005 WL 937486, at *3 (S.D.N.Y. Apr. 22, 2005)) (citations omitted).  The court explained that if the Russian court determines that the applicant has failed to meet the statutory requirements for the introduction of new evidence on appeal, it can simply exclude that evidence from consideration, but that is a determination for the Russian court to make. *Sergeeva*, 2013 WL 12169388, at *5.

In *Grupo Qumma*, the court also held, in the face of competing expert opinions on the admissibility of the requested evidence in the foreign proceeding, that the applicant "will use the requested discovery in the Mexican proceeding, as it will present the evidence to the Mexican court with a request that the evidence be considered."  *Id.* at*2.  The court rejected the argument that "for use" is limited to the actual receipt of materials into evidence.  *Id.*  Accordingly, "for use" does not mean that the evidence intended to be offered by the Applicant will in fact be successfully admitted and used by the Italian court.

Thus, under applicable case law, the "for use" element is met so long as there are some circumstances under which new evidence may be admitted, which is exactly the case here.  There is nothing in the record to even suggest that the BCA has unequivocally stated that it will not accept any new evidence from the Applicant and Manfredi and RCC fail to cite to any such statement. Rather, the parties have submitted expert opinions demonstrating circumstances under which the BCA may hear new evidence. (*See, e.g.,* Vaccarella, ECF No. 41-2, at 2 ("production of new documents is allowed by exception" if certain conditions are met.); Sassani, ECF No. 56-1 ¶ 21 ("the Court will not consider anything regarding the purported submission until the conclusive hearing"); Salvaneschi, ECF No. 46-6, at 3 ("Although in principle new evidence is not admitted in the remand proceeding, relevant exceptions to such rule occur, as also recognized by unanimous case law."); Grossi, ECF No. 46-7, at 10 ("Article 394 c.p.c. introduces exceptions to the rule that the scope of the proceeding on remand be 'closed' or limited to the demands and evidence already introduced in the original proceeding that ended by way of a judgment that was reversed and remanded."). Even the R&R recognized that there are circumstances under which new evidence may be admitted in the Remand Proceeding.  (R&R at 30: "Vaccarella explains that referral from the Italian Supreme Court to the Bologna Court of Appeal is governed by Article 394 of the [Italian Code of Civil Procedure], **which precludes introduction of new evidence except under very limited circumstances** … [ECF No. 35-4]." (emphasis added)).

In requiring that new evidence be admissible in the Remand Proceeding, the R&R improperly decided the rather complex issue of whether the admissibility exceptions under Italian law are satisfied, concluding that the "for use" element is not met because the exceptions do not apply, citing the opinion of Prof. Sassani. (R&R at 32: "Professor Sassani makes it clear in his original declaration that the exceptions do not apply here [ECF No. 41-3 ¶¶ 9-18]."). As the case law makes clear, it is the Italian Court, rather than this Court, that should decide whether new evidence is admissible in the Remand Proceeding. The Italian Court will be in a better position to do so if the Applicant is permitted to conduct the requested discovery first; instead, if the 1782 application is denied, the Applicant will be deprived of his opportunity to try to offer new evidence in the Remand Proceeding. *See Grupo Qumma*, 2005 WL 937486, at *3 ("The Mexican court, rather than this Court, should decide whether the additional evidence is admissible, and it will be in a better position to do so if Qumma is permitted to conduct the requested discovery first. If the § 1782 application were to be denied, Qumma would be deprived of any opportunity even to try to offer the evidence."). It should be for the Italian court to decide whether the evidence that the Applicant wants to offer is in fact admissible under the specific circumstances of the case.

**D.      The R&R Erred in Finding that the New Evidence is Inadmissible Under Italian Law**

Even if the admissibility of the requested discovery under Italian law were relevant to the "for use" analysis, which is not, the R&R erred in concluding that the requested evidence would be inadmissible in the Remand Proceeding. (R&R at 30) The Applicant has demonstrated through the declaration of Prof. Patti, and the independent opinions of Prof. Grossi and Prof. Salvaneschi, that under Italian law, the evidence requested by the Applicant is admissible in the Remand Proceeding. For instance, pursuant to Italian law, new documents are admissible where the party could not offer that evidence or exhibit those documents in the first instance proceeding for reasons not attributable to him. (Patti Decl., ECF No. 46-1, ¶¶ 22, 23; Salvaneschi, ECF No. 46-6, ¶¶ 14, 21, 25, 26; Grossi, ECF No. 46-7, at 11, 12) This category includes documents that existed at the time of the first degree judgement, but that were not available to the party who is producing them due to *force majeure*; or any document that *did not exist* prior to, or any information concerning events occurring after, the first judgement, which was unavailable to the party. Such new discovery may be produced during the appeal proceeding, as it would have been in the court of first instance. (*Id.*) Here, the Applicant was unable to introduce information concerning RCC's acquisition of Silversea during the proceedings in the court of first instance because either it did

not exist at that time or the Applicant was not aware of its existence or location.  The Applicant has the right to produce new evidence concerning RCC's acquisition of Silversea and any document that was exchanged or produced during the course of due diligence in connection with said acquisition. (Patti Decl., ECF No. 46-1, ¶¶ 23–25; Salvaneschi, ECF No. 46-6, ¶¶ 10-13, 16-18, 35-38; Grossi, ECF No. 46-7, at 11)  Vaccarella concurs.  (Vaccarella, ECF No. 41-2, at 1, 2)

Moreover, since in 2018 the Italian Supreme Court annulled the BCA's decision (and consequently also the decision of the trial court), and has remanded the case to the same court, the BCA will have to admit new evidence, including without limitation evidence necessary to proceed with an evaluation procedure (*Consulenza Tecnica*), which in itself requires the production of new documents that did not exist at the time of the trial court's decision.  (Patti Decl., ECF 46-1, ¶ 24; Salvaneschi, ECF No. 46-6, ¶¶ 7-18; Grossi, ECF No. 46-7, at 10-12)  Again, Vaccarella concurs. (Vaccarella, ECF No. 41-2, at 1)  The trial court and the BCA had both decided (erroneously, as subsequently determined by the Supreme Court) that Manfredi had fulfilled his contractual obligations.  Therefore, those courts did not consider any of the requests put forward by the Applicant in his original pleadings, such as the request to quantify and grant to him revenues and dividends produced and distributed by Silversea, the alternative request to grant the Applicant compensation of the amount equal to the effective value of the shares in Silversea, and the request to make Manfredi liable for the dissipation of the Applicant's assets by Manfredi's controlled entities.  Hence, no discovery was made in connection with those issues.

The R&R's statement that "none of Francesco's expert opinions actually refute Professor Sassani's opinion" (R&R at 32) is therefore erroneous. The declaration of Prof. Patti and the opinions of Francesco's independent experts all conclude that the evidence the Applicant has requested under § 1782 for use in the Remand Proceeding is admissible under Italian law.

**E.     The R&R Erred in Analyzing Foreign Law, Violating the "Twin Aims" of § 1782**

The R&R's denial of discovery based on its application of Italian law is contrary to the purpose of § 1782.  The BCA's May 21 order expressly stated that the BCA was "reserving all evaluations on the admissibility of the document **produced**" by the Applicant on May 21, 2019, which means that the document *may* be admissible.  In deciding that the "for use" element is not met because the documents cannot be admitted in the Remand Proceeding, the R&R has superimposed its own interpretation of Italian law over that of the BCA. As a matter of law and policy, the R&R should have refrained from engaging in extensive analysis of Italian law,

14

especially since it heavily relies on Manfredi's attorney's interpretation of such law. In deciding that no new evidence may be admitted under Italian law, the R&R has effectively replaced the BCA's forth-coming decision on admissibility of new evidence with its own, creating a risk of inconsistent rulings by this Court and the BCA.

In deciding whether to grant assistance under § 1782, "[t]he Court will not attempt to conduct a detailed analysis of foreign law, but rather focuses primarily on fostering the twin aims of the statute: providing an efficient means of assistance to participants in international litigation and encouraging foreign countries to provide reciprocal assistance to our courts." *Pimenta*, 942 F. Supp. 2d at 1289 (citing *Euromepa II* at 28). Accordingly, "United States courts should refrain from undertaking an extensive analysis of foreign law in determining whether to honor a request for judicial assistance, and should confine its [*sic*] inquiry solely to whether the evidence requested comports with language of 28 U.S.C. § 1782." *In re Request for Assistance From Ministry of Legal Affairs of Trinidad & Tobago*, 117 F.R.D. 177, 178 (S.D. Fla. 1987). "Our courts should not become entangled in interpreting foreign law when deciding whether to grant requests for judicial assistance. So long as the requests do not contravene the laws of the United States, they should be honored. It should be the responsibility of the parties before the foreign tribunal to argue the technical and procedural questions of local law, such as the admissibility of evidence. … If the situation were reversed, this Court would certainly prefer to interpret United States law rather than have a foreign tribunal sit in judgment." *Id.* Consistent with these principles, "a chief architect of section 1782's current version" has explained:

> [the statute's] drafters realized that making the extension of American assistance dependant [*sic*] on foreign law would open a veritable Pandora's box. They definitely did not want to have a request for cooperation turn into an unduly expensive and time-consuming fight about foreign law. That would be quite contrary to what they sought to be achieved. They also realized that, although civil law countries do not have discovery rules similar to those of common law countries, they often do have quite different procedures for discovering information that could not properly be evaluated without a rather broad understanding of the subtleties of the applicable foreign system. It would, they judged, be **wholly inappropriate** for an American district court to try to obtain this understanding for the purpose of honoring a simple request for assistance.

*Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099 (2d Cir. 1995) ("*Euromepa I*") (quoting Hans Smit, *Recent Developments in International Litigation,* 35 S.Tex.L.J. 215, 235 (1994) (emphasis added)). And in *Bernal*, this District similarly explained that courts "decline to engage

15

in speculative forays into unfamiliar legal territories to determine the likely reaction of a [foreign] court to any Section 1782 discovery." *Id.* at *7.

The US Supreme Court has held that "§1782(s)'s legislative history [does not] suggest that Congress intended to impose a foreign-discoverability rule on the provision of assistance under §1782(a)." *Intel*, 542 U.S. at 260. *Intel* clarified that a contrary approach would be "senseless" and it would "thwart §1782(a)'s objective to assist foreign tribunals," as ultimately §1782(a)'s objective is "to assist foreign tribunals in obtaining relevant information that the tribunals may find useful," leaving to the foreign tribunal the last word on how "to limit its own discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions." *Id*. at 262.

By analogy, when defining the scope of analysis of foreign law to determine whether the doctrine of *forum non conveniens* should apply and let the case proceed in the foreign, more convenient, forum, the chances of getting the interpretation of foreign law wrong would be high, and engaging in complex analysis of foreign law would increase the amount of litigation at a very early stage of the proceeding and also engaging in complex analysis of foreign law would be inconsistent with the very purpose of the doctrine of *forum non conveniens* "designed in part to help courts avoid conducting complex exercises in comparative law." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 251-52 (1981). When engaging in the analysis of whether the alternative forum is "adequate," the Court required only a "prima facie" analysis of the law of the foreign forum, and the district court should merely assess that there would be a remedy in the alternative forum. *Id*. at 254. The same general principle applies in the context of § 1782.  *See Veiga*, 746 F. Supp.2d at 18; *Republic of Ecuador*, 2010 WL 4027740, at *4.

The R&R's application of the Italian rules of admissibility to deny § 1782 discovery violates the policies underlying § 1782 and the twin aims of the statute. Although the R&R appropriately recognizes that whether to grant relief under the statute is up to the Court's discretion, the Court is not free to use its discretion on inappropriate grounds.  *Euromepa I*, 51 F.3d at 1097.  In this case, the R&R misapplies the guiding precedents and misperceives the extent to which it should have construed foreign law in deciding whether to grant discovery. As such, the R&R's analytic approach promotes the very thing that §1782 was intended to avoid.  *Euromepa I* at 1097. "We think that it is unwise—as well as in tension with the aims of section 1782—for district judges to try to glean the accepted practices and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law. . . . Such a costly, time-consuming, and inherently unreliable method

of deciding section 1782 requests cannot possibly promote the 'twin aims' of the statute." *Id.* at 1099–100.

**F.    The R&R Erred in Ignoring the Applicant's Experts' Opinions**

The R&R should not be adopted because it erred in ignoring the Applicant's expert opinions without an apparent reason and without the benefit of a hearing. "[A] District Court may weigh competing expert testimony but may not arbitrarily ignore expert testimony; rather, 'some reason must be objectively present for ignoring expert opinion testimony.'" *See Knight v. Thompson*, 797 F.3d 934, 942 (11th Cir. 2015) (quoting *United States v. Hall*, 583 F.2d 1288, 1294 (5th Cir. 1978)); *see also Mims v. United States*, 375 F.2d 135, 143 (5th Cir. 1967) ("even though expert opinion evidence is generally advisory in nature, it cannot be arbitrarily ignored."). Consistent with these principles, in *In re Pinchuk*, Magistrate Judge Goodman stated that he is "**not an expert on Cypriot law and it is difficult to select one expert's opinion as more credible than the others based solely on the submission of competing declarations from attorneys who all appear to be competent and experienced**." *In re Pinchuk*, No. 14-CIV-20047, 2014 WL 1328484, at *5 (S.D. Fla. Mar. 31, 2014) (emphasis added).

The R&R, however, does just that: in the 6 of the 35 pages devoted to the "Analysis" and "The Statutory Requirements: 'For Use' in a foreign proceeding,'" 4 pages discuss the arguments offered by Manfredi's experts, while only a conclusory statement references the Applicant's experts ("none of Francesco's three expert opinions actually refute Professor Sassani's opinion." R&R, p. 32). That statement ignores the several pages of analysis offered by the Applicant's experts contradicting Manfredi's and RCC's experts. The R&R thus frustrates the Applicant's due process rights to confrontation and evidence as well as the integrity of the judicial system, especially when considering that Vaccarella, one of Manfredi's expert on whom the R&R heavily relies, is Manfredi's attorney and not an independent expert. It is a universally accepted principle of substantive and procedural justice that an expert cannot be an advocate. This is because "the ultimate issue in such cases can too easily become whatever an expert witness says it is, and trial courts must be wary lest the expert become nothing more than an advocate of policy before the jury. Stated more directly, the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument. Indeed, the premise of receiving expert testimony is that it 'will assist the trier of fact to understand the evidence or to determine a fact in issue." *See In re Air Crash Disaster at New Orleans, La.*, 795 F.2d 1230, 1233 (1986). There is a "'deep-

17

seated belief that a district court must be permitted to protect the integrity of its fact-finding process.'" *Jarzyna v. Home Properties LP*, 201 F. Supp.3d 650, 662 (E.D. Pa. 2016) (quoting *Republic of the Philippines*, 43 F.3d at 67). "This is because '[o]ur legal system will endure only so long as members of society continue to believe that our courts endeavor to provide untainted unbiased forums in which justice may be found and done." *Id.* (quoting *Republic of the Philippines*, 43 F.3d at 73). "Accordingly, 'district courts have broad authority to preserve and protect their essential functions.'" *Id.* "The presence of a lawyer for party acting as an expert witness in a case would surely undermine the public's confidence in our legal system." *Id.*

**G.      Vaccarella is Not an Independent Expert and His Opinion is not a Fairness Opinion**

Vaccarella's expert opinion was presented as a "Fairness Opinion" (*i.e.*, an opinion by an independent expert). However, as Francesco has demonstrated, Vaccarella is not an independent expert; he is a professor who acts as Manfredi's lawyer in the Italian proceeding. This fact, which shows Manfredi's attempt to misguide the Court – Vaccarella's statement is labeled "Fairness Opinion" and Manfredi fails to disclose that Vaccarella is his lawyer --, is supported by the record (*see*, for instance, the minutes of the hearing of May 21, 2019) and has not been denied by Manfredi's Reply. The R&R mentioned Francesco's statement that Vaccarella is not independent (R&R at 13-14) but did not give any weight to that fact. The Court should not rely on Vaccarella's "opinion" *as if* it were an independent expert's opinion because it is a one-sided advocate's statement, exactly like that of Prof. Patti (which has not been considered at all).

**H.      The R&R Relied on the Opinions Manfredi's Experts Without Explaining the Reason for Disregarding the Opinions of Francesco's Independent Experts**

The R&R relied exclusively on the opinions and statements of Manfredi's proffered experts, and fails to recognize credibility issues and contradictions identified by the Applicant regarding those experts' submissions. The R&R gives no weight to the fact that Vaccarella is Manfredi's lawyer in the Italian Litigation and that his statement was presented to this Court as Fairness Opinion. Simply put, the R&R does not address Vaccarella's bias.

The R&R also made erroneous findings of fact concerning Vaccarella's credentials. According to the R&R, Professor Vaccarella "literally wrote the Italian rules of civil and appellate procedure", a statement that is not corroborated by the record and that only appears in the brief of Manfredi's counsel without any citation to the record. (R&R at 29) The R&R further incorrectly found that Vaccarella was a judge of the Italian Supreme Court, also an unsupported statement

contained in Manfredi's brief. (*Id.*) Instead, Vaccarella was a member judge of the Constitutional Court. (*See* ECF No. 35-2 at 1)

The R&R also ignored inconsistencies among RCC's and Manfredi's experts. For instance, Manfredi's experts contradict each other on whether article 345 of the Italian Code of Civil Procedure, permitting the introduction of new evidence in certain circumstances, applies to the Remand Proceeding. *Compare* Sassani, ECF No. 41-3 ("producing new documents granted by exception in article 345 ... of the Italian Code of Civil Procedure is out of the question") with Vaccarella, ECF No. 41-2 ("article 345 ... must be considered in the appellate court"; "it is unthinkable that the production of new documents ... might be decisive in resolving questions about events occurring in 2001 ... or about events occurring in 2007"). Manfredi's experts are also contradicted by the declaration of Dardani, RCC's proffered expert, who stated that "any third parties who intervene [in the pending appeal] would receive access to RCC[L]'s confidential documents." (RCC's Brief [ECF No. 42] at 7; Dardani Decl. [ECF No. 57-1] ¶ 4 and Dardani Decl. [ECF No. 42-3] ¶ 21) Dardani's statements presuppose that the documents requested by the Applicant could be presented to the BCA. The R&R did not take into proper consideration those contradictions or the rebutting opinions rendered by Francesco's experts. Francesco identified those contradictions and credibility issues in his opposition to Manfredi's and RCC's motions, and Manfredi and RCC failed to dispute these points on reply. Nevertheless, the R&R agreed with Manfredi's experts without explanation and without an objective reason, which was improper.

The R&R notes that "[t]he phrase 'Italian Litigation' used by Professor Patti is misleading and that the proceedings in Italy are more aptly called the "Italian *Appeal* Proceedings." (R&R at 29) However, the record demonstrates that Prof. Patti has made no attempt to mislead, but rather has consistently maintained since his very first declaration, dated February 22, 2019, that the Italian Litigation is on appeal before the BCA. (Declaration of Salvatore Patti dated February 22, 2019, ECF No. 5, ¶¶ 15, 23: "The case is now pending before the *Corte d'Appello di Bologna* . . . . "[W]hile typically a court of appeals may not allow production of discovery, there are exceptions to that general principle."). The definition of the ongoing litigation as the "Italian Litigation" is far from misleading and does not warrant disregard of all of the Applicant's proffered experts.

I.     **Manfredi Would Not Have Moved to Vacate the § 1782 Order if the Applicant Could Not Use the Requested Discovery in the Italian Litigation**

The R&R relies on and accepts the arguments submitted by the Intervenor, Manfredi. However, Manfredi is <u>not</u> the discovery-subject.  Manfredi is not the one who has to retrieve and produce documents to the Applicant. The only reason Manfredi objected to this application is that the discovered evidence could and will be used against him in the Italian Litigation.  Manfredi, in other words, knows and, by opposing Francesco's application, indirectly acknowledges that the requested documents will be injected in the Italian Litigation and may be considered by the BCA. Manfredi proffers no reason for opposing the discovery.  It is apparent that the possibility that the discovered new evidence may and will be used in Italy is precisely the possibility that Manfredi is erroneously denying. This Court should give little weight to Manfredi's arguments in light of his palpably conflicting position.

J.     **The Independent Opinion of Prof. Mirabelli, President Emeritus of the Italian Constitutional Court, Further Confirms that New Evidence May be Presented**

The R&R's reliance on Prof. Vaccarella's biased opinion appears to be based on the erroneous belief that Vaccarella is a former judge of the Italian Supreme Court. However, Vaccarella was a member judge of the Italian Constitutional Court (which is the body that decides when a law contradicts the Italian Constitution), not the Italian Supreme Court.

The Applicant respectfully submits as Exhibit 1 hereto the Independent Opinion of Prof. Cesare Mirabelli, President Emeritus of the Constitutional Court (the same body of which Vaccarella was a member), who served for ten years as a judge of the Constitutional Court before serving as the President of that court.  (*See* Exhibit 2, Declaration of Francesco Di Pietro, dated August 26, 2019, ¶ 2, and Ex. A thereto) Prof. Mirabelli's opinion contradicts the conclusions reached by the R&R and Manfredi's experts, and affirms not only that Francesco may inject into the Remand Proceeding any new evidence that he could not produce previously for reasons beyond his control (such as the § 1782 discovery requested from RCC concerning its acquisition of Silversea), but also that any law contrary to that principle would violate the Italian Constitution. (*See* Ex. 1, *passim*)  The independent opinion of a President Emeritus of the Italian Constitutional Court should be given prevailing authority over the opinion of a former judge of the same court, who is also Manfredi's attorney and, as such, not an independent expert.

## **CONCLUSION**

For the above-stated reasons, the R&R should not be adopted and the motions to vacate and/or quash should be denied.

Dated:  August 26, 2019

Respectfully Submitted,

/s/ Jason Canales
Jason Canales, Esq. (Florida Bar No. 793981)
jcanales@mosessinger.com
Francesco Di Pietro, Esq. (*pro hac vice*)
fdipietro@mosessinger.com
Zaid Shukri, Esq. (*pro hac vice*)
zshukri@mosessinger.com
MOSES & SINGER LLP
405 Lexington Avenue, 12th Floor
New York, New York 10174
Tel: (212) 554-7875
Attorneys for the Applicant
Francesco Lefebvre D'Ovidio

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY THAT a true and correct copy of the foregoing was served on counsel for respondent Royal Caribbean Cruises Ltd. and counsel for intervenor Manfredi Lefebvre via the Court's CM/ECF system on August 26, 2019.

/s/ Jason Canales
Jason Canales, Esq.

22